REQUESTED BY: Senator Dennis Baack 2101 State Capitol Lincoln, N.E. 68509
Dear Senator Baack:
Attached is our opinion concerning the Commodity Credit Corporation Loan Program which you requested. This matter appears to be another case of the federal government creating an impossible situation for Nebraska sugar beet producers.
On the one hand, if Nebraska law provides, as it does, that a lien against sugar beets remains a lien on the sugar processed from those beets, then Nebraska producers cannot qualify for the Commodity Corporation Loan Program without obtaining lien waivers.
On the other hand, if the Nebraska Legislature, in order to correct this problem, amends the law to provide that a lien on sugar beets doesnot carry over to the processed sugar, then it may be difficult, or even impossible, for some producers to obtain bank loans needed to produce the crop in the first place.
Because of this federal "Catch 22" problem, I believe that our Congressional delegation should be asked for their assistance.
Congressional Delegation
DATE: November 1, 1991
SUBJECT: Commodity Credit Corporation Loan Program
REQUESTED BY: Senator Dennis Baack Nebraska State Legislature
WRITTEN BY: Don Stenberg, Attorney General
Jan E. Rempe, Assistant Attorney General
You have requested our opinion regarding whether the laws of Nebraska allow for the attachment of a security interest to raw or refined sugar when such security interest was initially asserted against sugar beets from which the sugar was made or the proceeds thereof.
In connection with your opinion request, you have advised us that new federal regulations have been issued concerning the Sugar Price Support Program conducted by the Commodity Credit Corporation (CCC).See, 7 U.S.C.A. § 1446g (Supp. 1991); 56 Fed. Reg. 47125 (1991) (to be codified at 7 C.F.R. § 1435.1 — 7 C.F.R. § 1435.13). These regulations set forth the terms and conditions under which price support loans may be given to eligible processors by the CCC.7 C.F.R. § 1435.1, supra. Under the regulations, entities that commercially process sugar beets into refined sugar may receive nonrecourse loans through the CCC, but must agree to pay sugar beet producers minimum price support levels specified by the CCC. 7 C.F.R. §§ 1435.3-.4, supra. In order to obtain a CCC loan, sugar processors must pledge as collateral sugar produced from sugar beets grown by the producers who receive price support. 7 C.F.R. § 1435.5,supra. However, because all sugar which is pledged as collateral for a CCC loan must be free and clear of any liens, the sugar processor must obtain either: (1) a lien waiver from all persons having a lien or other encumbrance on the sugar beets or proceeds thereof; or (2) an opinion from the State Attorney General which concludes that state law does not allow for the attachment of security interests to the processed sugar when such security interest was initially taken in the sugar beets or proceeds thereof. 7 C.F.R. § 1435.9, supra.
You have also advised us that most sugar beet producers in your legislative district obtain operating capital from local banks and other financial institutions. Presumably, these financial institutions perfect security interests in the producers' beets and proceeds thereof. You state that when the producer later delivers the beets to the sugar processor, the beets are commingled with sugar beets from other producers. The sugar beet producers are then paid in various increments over the course of a year.
Based on the following analysis, we conclude that in certain situations, a security interest taken in sugar beets or proceeds thereof may also extend to the sugar processed from the beets. Therefore, the CCC's interest in sugar pledged by sugar processors as collateral for CCC loans would not be absolutely protected in all cases.
Article 9 of the Uniform Commercial Code, codified at Neb. Rev. Stat. vol. 6, §§ 9-101 to 9-507 (Reissue 1980) (hereinafter "Neb. U.C.C."), governs secured transactions. Neb. U.C.C. § 9-306(2) (Reissue 1980) states:
 Except where this article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.
A major exception to this general rule appeared in Neb. U.C.C. § 9-307(1) (Reissue 1980):
 A buyer in ordinary course of business (subsection (9) of section 1-201) other than a person buying farm products from a person engaged in farming operations takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence.
Under the "exception to the exception" in § 9-307(1), farm product buyers remained subject to a secured lender's interest in the product.
However, as part of the 1985 Food Security Act, Congress preempted state laws which contain the above "farm products exception." Effective in December 1986, 7 U.S.C.A. § 1631(d) (1988) provides:
 Except as provided in subsection (e) of this section and notwithstanding any other provision of Federal, State, or local law, a buyer who in the ordinary course of business buys a farm product from a seller engaged in farming operations shall take free of a security interest created by the seller, even though the security interest is perfected; and the buyer knows of the existence of such interest.
Subsection (e) then describes the conditions under which the buyer takes the purchased farm product subject to a security interest created by the seller. In summary, a farm product buyer will take subject to a security interest if:
 1) The buyer receives from the secured party or seller written notice which meets certain requirements within one year before the sale; or
 2) The state in which the farm product is produced has a federally approved central filing system, and
 a) The buyer has failed to register with the Secretary of State, pursuant to the central filing system, prior to the farm products purchase, and the secured party has filed an effective financing statement (defined in subsection (c) of § 1631) covering the farm products being sold, or
 b) The buyer receives from the Secretary of State written notice which specifies the seller and the farm product being sold as being subject to an effective financing statement or notice, and the buyer does not secure a waiver or release of the security interest.
See, 7 U.S.C.A. § 1631(e) (1988). See, also, 9 C.F.R. § 205.211 (1991) (intent behind federal act was to preempt state laws reflecting the "farm products exception"). Under the act, "farm products" include agricultural commodities produced in farming operations that are in the possession of a person engaged in farming operations. 7 U.S.C.A. § 1631(c) (1988).
Nebraska was one of the first states to pass enabling legislation creating a central filing system under 7 U.S.C.A. § 1631 (1988).See, Lisco State Bank v. McCombs Ranches, Inc., 752 F. Supp. 329 (D. Neb. 1990). This central filing system, codified at Neb. Rev. Stat. §§52-1301 to 52-1321 (Reissue 1988), received federal certification in December 1986. Id. Under the Nebraska act, "farm products" specifically include sugar beets. § 52-1308. The Nebraska act also provides that persons who, in the ordinary course of business, buy farm products from persons engaged in farming operations and in the business of selling farm products, "shall take subject to the security interest" identified under the central filing system covering the purchased farm products. §§ 52-1303 52-1320(1). Section 52-1320(2) allows a buyer to take free of any security interest covering the farm products if the buyer secures a waiver or release of the security interest.
In conjunction with Nebraska's establishment of a central filing system, Neb. U.C.C. § 9-307(1) (Cum. Supp. 1990) was amended to refer to the possibility that farm product buyers may be subject to security interests under the central filing system statutes:
 A buyer in ordinary course of business (subsection (9) of section 1-201) other than a person buying farm products from a person engaged in farming operations takes free of a security interest created by his or her seller even though the security interest is perfected and even though the buyer knows of its existence. A buyer of farm products may be subject to a security interest under sections 52-1301 to 52-1321.
Id. (emphasis added).
Therefore, despite federal preemption of the "farm products exception" in state versions of U.C.C. 9-307(1), protection of farm product buyers is not absolute under the Food Security Act and Nebraska law since the acts allow security interests in farm products, such as sugar beets, to survive a sale in certain circumstances, as detailed above. Hence, a farm lender's security interest in a farmer's sugar beets and proceeds thereof could in certain cases continue in the beets after they have been sold to a sugar processor. It must now be determined whether such a security interest continues when the beets have been mixed with other producers' beets and processed into sugar.
Under Neb. U.C.C. § 9-315 (Reissue 1980),
 (1) If a security interest in goods was perfected and subsequently the goods or a part thereof have become part of a product or mass, the security interest continues in the product or mass if
 (a) the goods are so manufactured, processed, assembled or commingled that their identity is lost in the product or mass. . . .
"Goods," as used in Article 9 of the U.C.C,, include both "farm products" (crops produced in farming operations in a farmer's possession) and "inventory" (goods held for sale or lease). See, Neb. U.C.C. §9-109 (Reissue 1980); Neb. U.C.C. § 9-105, comment 3 (Cum. Supp. 1990). Thus, the above rule would apply to sugar beets which change from being "farm products" in the farmer's hands to "inventory" in the sugar processor's hands.
Therefore, a farm lender's perfected security interest in sugar beets that have been sold to a sugar processor continues when the beets are commingled with other farmers' beets, manufactured, and processed so that the beets' identity is lost in the end product, sugar. When the collateral loses its identity in such a manner, the security interest continues in the mass or product and the proceeds received from the sale, exchange, or other disposition of the mass or product. Matter ofSan Juan Packers, Inc., 696 F.2d 707 (9th Cir. 1983).
Based on the above state and federal laws, we conclude that a security interest may attach to raw or refined sugar in the hands of a sugar processor, even though such interest was initially asserted against the sugar beets from which the sugar was made and the proceeds thereof.
Sincerely,
 DON STENBERG Attorney General